May it please the Court, my name is James Lesmeistie. I represent Attorney Craig Hoffman. I'm Sal Indomenico. All right. Good morning, gentlemen, and welcome. As a first matter, Mr. Indomenico has filed a motion entitled, to transfer this matter to another division of the appellate court. We have read the motion and the attached affidavit, as well as the response that was put in by Mr. Lesmeister this morning. Both of them seem to make factual statements that are outside the record of this case for reasons that I understand. Is there anything else in the record of this case that you want to cite us to? Does anyone have any questions of either of these gentlemen? Well, there was a response filed. Did you see a copy of the response? I did. All right. And the response indicates that maybe three years ago a case was referred to this other firm? It's actually been litigated more recently than that, Judge. All right. But either way, there's nothing, this was not in the record. All right. Then, respectfully, the firm that's referred to in your motion, in my estimation, in our estimation, has really nothing to do with this piece of litigation whatsoever. And whether or not we would recuse ourselves or transfer it, were that not the case, really isn't the issue in this circumstance. And so we're going to respectfully deny the motion to transfer So Mr. Lesmeister, why don't you proceed? May it please the Court. My name is James Lesmeister. I represent Craig Hoffman. The first issue I'd like to talk about is the Attorney's Lien Act as it is considered along with Rule of Professional Conduct 4.2. And the Attorney's Act is over 100 years old when it was written. Rules of Professional Conduct came later. But what Rule 4.2 requires and is mandatory of every attorney is that once you know another party is represented by counsel, that you cannot contact that party directly. All right. Well, the first issue I think we need to talk about is whether or not the trial judge determined that there was no statutory lien for, I think, two reasons. The first one was that she concluded that Mr. Hoffman was not the attorney representing Andrew Weatherspoon's mother. I forget her first name. Brenda. And she also concluded, I thought in her order, that Brenda died. But in any event, she concluded that the lien act had not been complied with. And the only issue really that was covered by the trial court was whether or not there was an effective lien in this case. She basically said I'm not going to deal with the breach of contract, breach of fiduciary duty, quantum meriwit. So is it your position solely that because of the rules of professional conduct don't let you contact someone that's represented by an attorney that you couldn't comply with the lien act? Is that what you're arguing? My position is that he did perfect under the lien act. And as I read the judge's opinion, she did not say how he did not perfect that lien. I think what she said was that Mr. Hoffman did not represent Brenda, but the firm of Selk in Domenico and Associates contracted with Ms. Thompson in their office, and therefore there was no statutory, there was no lien right because Mr. Hoffman was an attorney, and there was no statutory client in which to place the lien. I understand your question. My answer to such is there's a written contract. We have a written contract that has two attorneys on it. And my response to that is if he was just an associate and he had no expectation of a referral fee, why have a written contract? Why have a written contract which specifically outlines compliance with Rule 1.5 in terms of referral fees and then has a page which designates him as the referring attorney? Well, I think we have to look at that agreement. And again, the judge made a decision for whatever reason, not to consider the other claims that Mr. Hoffman had. But the contract itself doesn't name Mr. Hoffman in the agreement. I mean, we can look at it. The first page says that the undersigned client retained Selk in Domenico and Associates. Correct. And then the referral agreement, which is Appendix 19. On page 3. Yes, I agree with you that there is this page 3. But in terms of the first question about who Brenda Thompson actually hired, I think the other Mr. Hoffman has a right to pursue his other claims is something you argue in your second issue, and that is that the court abused her discretion by not letting these claims be heard. But your first primary concern is, is Craig Hoffman in his individual capacity part of the contract? And my answer to that question is yes. All right. Well, but the cases that, you know, have been referred to us by both of you are specifically show a situation where the contract that was entered into between the client was entered into between the client and a firm and an attorney or two attorneys. So the document clearly tells, says that. So, I mean, we do have to consider the document. The document says that he is the referring attorney. There's no issue that he's not in compliance with Rule 1.5 that as the Associates and this is something that the trial judge does acknowledge is that Craig Hoffman was an Associate, that's in the first page of her opinion as a fact, that Craig Hoffman expected and relied upon if he referred cases to the firm that he would receive a referring attorney's fee. All right. Those are facts that are in the record from the judge. But how do we get to who actually has the attorney-client relationship? Both of them do. Both of them do. Both of them have that attorney-client relationship. Both of them do. And you're referring to the fact that the last paragraph of page 3 agreement says it's anticipated that the referring attorney shall contribute a share of legal services to be rendered to the client in proportion to the percentage of fees he earned? Correct. Furthermore, based on that, and the trial judge noted that while Craig Hoffman was in the employer of Salad, Domenico, and Associates, that he did do the depositions of nurses, he did do the depositions of witnesses, he handled the case while he was there. Now let's move on then to the death of Brenda Thompson. Cases say that when a client dies that the right to the funds die and that the subsequent there would have to be a quantum merit claim. In this case, are you suggesting that Mr. Hoffman has a contract with Dandra, the daughter? Yes. And what would that be based on? The joint venture relationship of the parties which is established by this contract. But the joint venture relationship, even if we accept what you're saying is true, that there was a joint venture relationship between Mr. Hoffman and the client. When Mrs. Brenda Weatherspoon dies, it doesn't, of Thompson, excuse me, that the attorney-client relationship ends and that the attorneys have to pursue a quantum merit action. They don't have the right funds that were settled later when Ms. Weatherspoon took over as a client. When Mr. Hoffman, of Brenda's death, people die. That's what we do. We live, we die. That happens at times. In personal injury contracts, we see it because this is when disputes arise. But what we have is, I'm sorry. I wanted to ask you, what, how does a lien arise for the funds that were later obtained when Dandra Weatherspoon is the specialist? How does a lien arise for the funds that were later obtained when Dandra Weatherspoon is the special administrator? How does a lien, how do you, from any case you've cited, suggest that a statutory lien is available? I'm not suggesting that there isn't a breach of contract or necessarily a breach of fiduciary duty or a quantum merit action. The only thing I want to get to first is the statutory lien. The statute has to be construed strictly. The lien was filed three months after Brenda Thompson died, and it's with Ms. Thompson, who is no longer a client. Your question is, how was that lien not extinguished by Brenda's death? Well, first of all, I don't know if it was ever created in the first instance, but I don't see how it somehow transferred to another person. And you filed this lien three months after the attorney-client relationship was gone for all intents and purposes for purposes of the lien. Because of the joint venture, what we had is a commonality of interest between Sally Domenico and Craig Hoffman. The joint venture cases that you've cited and that Mr. Domenico has cited have nothing to do with whether there was a statutory lien. Well, the Karchmar case, by way of analogy, is you had that case where you had a joint venture relationship between two attorneys. They won a very substantial verdict at trial. It went all the way up to the Supreme Court. It was reversed. That verdict was reversed. The PLA was denied. Then 90 days subsequent to the PLA, the case was settled, and Karchmar says, where is my referral fees? He says, you don't get it. There's a new contract. The client in the Karchmar case says that I don't remember ever talking to Karchmar or writing the letter telling him he was terminated. How is Craig Hoffman, who has a fiduciary relationship with Mr. Domenico, supposed to handle the situation if he doesn't even know Brenda is dead? Again, though, this is not a statutory lien case. And in this case, Marshall, the person who had the action, the personal injury action, retained Karchmar and then agreed subsequently in writing to allow the other attorney, Mr. Neferal, if I'm pronouncing it correctly, to be co-counsel. But this case does not tell us anything about the lien statute. I think part of the problem is that there are a number of remedies that are being sought for the same perceived problem. And that all that was considered by the trial court in the Karchmar case, the trial judge, was one of them. And what I view this colloquy as trying to establish is simply the ability of the statutory lien act, which has to be strictly construed to apply to these sets of circumstances. That is really all we've discussed thus far. And when we go back to the contract, when we go back to the potential breach of contract claim or violation of good faith as joint venturers, things of that nature, that's a different issue at this point. Yes. I understand. Strictly speaking, in terms of the Attorney Lien Act, Your Honor's point is that your concern is that the death of Brenda extinguished the attorney-client relationship between Salin, DeMantle, Craig Hoffman, and Brenda. I think I understand your position. I think we should talk about the second issue, and that is, all right, the trial judge wouldn't hear your breach of fiduciary duty, breach of contract, and quantum merit action. She basically said, I'm not going to join these. And how are we  going to do that? Yeah, that's abuse of discretion. Did this preclude you in any way from having your action heard at all by her deciding not to consider it with the underlying personal injury suit? Those actions can't be filed separately. But here we are, this just started back in the fall of 2009, and the law moves slow. It's now going to be motion practice. There's going to be an issue of res judicata. There's going to be all the other things that we have. In a matter of expediency, all these matters could have been handled at once and should have been handled at once. But the question is, is it an abuse of discretion not to have done that and to require you to have a separate action filed? The Anderson case is directly on point. It's the same dispute in terms of the attorney came in, associated with this new attorney, then all of a sudden a new attorney took over the case. They consolidated all those actions together. But the issue with Anderson was, did the court abuse its discretion and consolidate? Here the question is, did the court abuse her discretion in not letting you have your action heard with the underlying personal injury action? Right. And the analysis is the same. Was there abuse of discretion to do so in the Anderson case, or is there abuse of discretion not to do so in this case? And I'm answering in the affirmative, yes, there was. It's because it's expedient. All these things are intertwined together, whether there was a joint venture, breach of contract, attorney's lien. Does the ruling that you didn't comply with the lien act, let's say for the reason that Brenda Thompson wasn't Mr. Hoffman's client, does that prevent you from securing fees under this contract? Is that, are you saying that would be res judicata? No, but it would be something that I suspect and anticipate will come from my adversary in this situation. Well, how would that be possible in a situation where you tried to assert the claim and the claim was not considered by the trial judge? That would be an argument on my side, but again, until it's adjudicated by a judge, it's only my argument. Because what your Honor just said is if I do face a res judicata argument, my position would be that the judge did not consider it. But I am reminded of the old baseball joke, the three umpires. The first one says I call them as I see them, and the second one says I call them as they are, and the third one says it ain't nothing until I call. So until I cross that bridge and file a cause of action, and then a separate trial judge adjudicates whether or not there is res judicata, it is an argument that he will present, my adversary. So in terms of what your Honor said, I will use that as a position to say that it is not res judicata. But regarding it, I do think it's an abuse of discretion because all the parties that needed to be there were there, but more importantly, Mr. Indomenico chose that forum. It was not us who chose that forum. He brought the attorney's lien. He opened up that forum for that, rightfully so. We should have had everything been adjudicated right then and there. It was not us who said let's come in here and adjudicate, we're asserting a lien. Well, he had to have that lien adjudicated in that suit, didn't he? He chose to do so. That was his election to do so. Anything further? No, Your Honor. Other than if the panel wants me to talk about the conflict I see between Rule 4.2 and the Attorney-Lean Act. Other than the language of the rule, you haven't really cited any case to interpret the Act that way. That's correct. Thank you. Mr. Indomenico. May it please the Court. Judge Indomenico, after Mr. Thompson left in May of 2008, he took cases with him that he believed were his, obliterating hard drive and paper files. Now, the reason I mention that, Your Honor, is not to disparage him. The only reason I mention that is for a very, very important point and I want to make sure that's clear on the record. The reason for that is a belief that those cases were his. Now, in this case, Mrs. Thompson was still alive in May of 2008 when he left. Presumably, just like the other clients, he contacted her, if he truly believed it was his client, to take the case with her. She did not leave. She stayed with the firm. Let me ask you this. You argue in your brief that all that he did in getting the case to your firm was done as an associate, that he was doing it on time for which he was being paid by your firm and he was acting essentially as an agent of the firm. That's correct. Correct? Yes. Page 3 of your contract refers to him as a referring lawyer and gives him a, at the end of this contract, an entitlement to a percentage of the fees. And had your view of his terms and conditions of employment or the manner in which he brought the case to your firm changed from the time you signed this document to the time you're asserting the current position? It depends, Your Honor, on when and if he was going to be leaving the firm. And that's what those contracts, what that referral agreement contemplates, that there is another attorney who's responsible on a case under Rule 1.5. And I should say, Your Honor, that that referral agreement is under Rule 2-107. We hadn't even been using those forms. And one of the things I raised in my brief was that the inability to contract with clients. Only I had the authority to contract with any client, period. But you didn't assert the position at the time he brought the case in that, well, you brought it in while I was paying you. And therefore, you are an agent of this firm. And therefore, you are not considered to be a referring lawyer. And therefore, I will not agree to consider you a referring lawyer or pay you any percentage of the fees. That position was not taken at the time the case was brought in. And that position also has not been adjudicated by Judge Dirk and Roy. That position was not addressed at all. And there are evidentiary matters that we can go into at the trial court level on something like that, depending on your ruling. I understand that. And I understand that she hasn't reached that ruling. Yet, nonetheless, you rely on your interpretation of the terms and conditions of Mr. Hoffman's employment in your brief. And my question was directed at, it seems to be inconsistent with the position that's being made in this written document on page 3. I can see how you can see that, Your Honor. But again, that has not been something that has been adjudicated. And there are defenses to that. However, it's not – Well, but doesn't the referring attorney agreement in page 3 perhaps suggest that this was a joint venture? No, it was never a joint venture, Your Honor, because a joint venture – And it says that the undersigned parties to this agreement are your firm and then Mr. Hoffman, and that he's a referring attorney. It does state that, Your Honor. But again, there are defenses to that, and that had not been gone into by Judge Dirk and Roy. Now, I would add that the case that the Court addressed, that Anderson case, with respect to the other matters and consolidating all these All the appellant had to do was simply ask the Court to consolidate all these matters on a motion. There was no such matter before the Court whatsoever. And can I ask you this? The record doesn't contain an actual counterclaim of any kind, does it? It was simply a response to your petition for the – Correct. Adjudicate the lien. Correct. There was no actual counterclaim filed. It was simply a response. Correct. And he had sent out that lien, I believe, in December of 2008, if memory serves me correctly, about three months after Mrs. Thompson had died. The lien was actually ineffective, even as worded. What was the basis for your objecting to these being heard in this proceeding, at some point, even if it were in the future? What would be the objection? To what? To considering his claim. I never objected to his consolidation in the trial court. He never made it. But didn't you object to the consideration of the breach of contract and the breach of fiduciary duty? The Court clearly states in the order, the memorandum of opinion, that she was not even addressing that because none of those matters were before her. I think the record shows that he didn't file a counterclaim. He answered your petition by saying that he had a joint venture agreement. It was simply a written response. Correct. And he could have done so. He could have filed a counterclaim. He could have asserted all those matters. He could have asked the Court to consolidate anything that he wanted to, that he was raising. He never did. And that's why the Court said, look, the only thing that's in front of me is this, and this is the ruling that I am making, based on what was asserted. And that's really the only issue that's before the Court, as I see it, as far as whether or not there was a valid lien, whether or not that lien was adjudicated, and whether the Court abused her discretion in any way, shape, or form in construing the lien act strictly as it should have been construed in this particular setting. Well, if we are to conclude, do you agree that the review of the statutory lien is de novo? That our review is de novo of what Judge Dirk and Roy did? In this particular case? Yes. I assume so, because the Court is making a summary disposition or summary judgment. Judge Dirk and Roy concluded that there was no attorney-client relationship between Mr. Hoffman and Mrs. Thompson. Correct. And that's clearly on point with respect to the ---- Breach of fiduciary duty, breach of contract. Because there was no contract with Mr. Hoffman and the client. Except for page 3. There certainly seems to be something between you and Mr. Hoffman. That's not a contract with the client. That's only a consent about any mutual agreement that might be had between attorneys. The contract with the client is spelled out in pages 1 and 2. And as all the cases cited, Thompson v. Heider, In re, Johnson, even the Neverell and Karchmer case that was cited by defendant, every single one of those cases, the client either before referring the case had retained an attorney, and another attorney had been brought in, such as the case with respect to ---- And I agree with you that the cases sort of spell out the relationship. But in this case, we have a page 3 that is signed by Brenda Thompson acknowledging that Mr. Hoffman is a referring attorney. And wouldn't Mr. Hoffman, in a case of legal negligence, be subject to suit just as well as you individually or the firm? No, Your Honor, he would not. And that's a very, very important point on a joint venture. Because the individual that was hired was my law firm to represent Ms. Thompson. And I have an attorney who was an employee of the firm. Any act or omission of that employee is on my shoulders because the client hired Salen Domenico and Associates, not Craig Hoffman. And that's a very, very important point. So if there was a joint venture, unlike the other cases such as the Thompson, In re, Johnson, and the Karchmer case, the client has two attorneys that he or she had hired in those cases. And in each of those cases, each of those attorneys would have been responsible for any act or omission of the other attorney. Not in this case. But you have a situation where the page 3 not only refers to Mr. Hoffman as a referring attorney, but also states correctly, state of the law, that he is to participate in the representation of the client and to contribute legal work. Again, Your Honor. And would he then somehow be immune from any errors or omissions that he made in the representation if he happened to make them? Immunity, I don't know in what sense you're referring to it. In terms of liability issues, it would all fall on Salen Domenico and Associates who hires him, who pays his malpractice insurance. He would have nothing to pay that particular client. If, as in the case here, he left and continued to have, other than here, continued to have some input into the representation case, would he then be able to be sued for post-separation? No, because there is no contract with him. You see, the contract is what is binding on us as attorneys. If there is a contract, as the case law states, the contract makes the retained attorneys responsible for any acts or omissions. If he's not a named attorney on the contract, he has no liability.  Mr. Domenico, would you consider the proceeding that took place here like a summary judgment? I mean, other than the evidentiary hearing consisted of these documents and papers that were filed by the attorneys. Is that correct? There was no testimony taken. No, Your Honor. There actually was testimony. There was? In fact, I even stated in my brief that Judge Durkin-Roy specifically questioned us for an hour, asking us a variety of questions, which led to her memorandum of opinion. She did not base her memorandum of opinion on solely the briefs. Those transcripts aren't in there. There was no transcript because there was no court report that had been ordered. But I'm telling this Court as an officer. Were you placed under oath? Yes. We were both in front of the judges. No question about that, Your Honor. Because I remember that hearing where the judge specifically asked us each a variety of questions, and she was taking down notes as officers of the court. And you were under oath beforehand? As officers of the court, yes, we were under oath, Your Honor. Were you sworn? To be honest with you, Judge, I would be honest. That would be refreshing, yes. Well, you are under oath right now. I have been, Your Honor. Just as you are in every single case as an officer. As an officer of the court, Your Honor, whether I'm sworn or not, I'm representing to you as an officer of the court that I'm telling you the truth. Of course. So what I'm saying to you, Judge, is without question, in answering Justice McBride's question, we were questioned ad nauseum for almost an hour where she wanted clarification on a variety of matters. She considered it and then issued her memorandum. And were there cross-examinations done by the opposing counsel? We were the only two in front of her, Your Honor. So she was asking questions to each of you, although it doesn't appear in any record? There is absolutely no question about that. But you'd call this something more like – I mean, you wouldn't describe this as more like a summary judgment proceeding? I guess it would be a hybrid, if you will, because if she's asking us evidentiary – I was just curious. If she's asking us questions. It was described as an evidentiary hearing, and I think you've enlightened us as to what actually took place. But, I mean, there was no question about that. Again, the issue about the contractual matter could have been brought in the underlying claim by the appellant. They chose not to proceed. They chose not to do that. It could have easily been satisfied by following the tenets of Anderson, as they cite, simply by making either a motion to consolidate or filing a separate motion. I believe that the Court did correctly decide what was before her. Any other questions? Thank you, Mr. Andomenico. Any final words, Mr. Lesmeister? To go back to Your Honor's question about did Brenda's death extinguish the lien or is there a lien? You can't analyze this situation in a vacuum as strictly as how this trial judge did, as just a lien. My position on that is, how can the Court consider a lien without considering the joint venture? Because Mr. Hoffman was not notified of Brenda's death. And you say, why does that matter? Well, because we're asserting there's a joint venture. And under a joint venture, you have a duty of good faith and fair dealing with your co-joint venture. And I think we've already kind of agreed with you that the only issue Judge Roy decided was whether or not there was an effective lien there, not whether there was a breach of fiduciary duty, breach of contract, or quantum heroin action that perhaps was available. She never really got to that. And my point is that there goes further into why it was abusive discretion. She shouldn't have considered it at all because you can't consider one without considering the others. This new contract that was entered into between Mr. Andomenico and the new administrator of the estate, it's not dated. It's Appendix 2021, Record C-18, C-19. It's not dated. Mr. Lesmeister, did you ever file a counterclaim in this action? C-2822 starts Mr. Hoffman's entitled response to the petition to adjudicate attorney's lien and counterpetition to enforce the referral agreement. And he does request that as wherefore clause that his contract claim be adjudicated. What does it say, counterpetition to what? To enforce the referral agreement. So I was not hired until the motion to reconsider. But I didn't see anything in the record from the time before I was in the case till after the case claiming that this wasn't sufficient notice and it was responded to by Mr. Andomenico. So procedurally, it was not harmful, but I think it was considered and the judge rejected it. Now, I was not there at that hearing, but I'm at this hearing now as an officer of the court, and this is not an evidentiary hearing. I've been practicing 17 years, and I've done a lot of oral arguments before trial judges and appellate courts, and those are not evidentiary hearings. There's no indication from that order of December 1, 2009, that it was an evidentiary hearing. That's the way we're going to be looking at it. I mean, the parties agree. Thank you. Thank you for your time and your questions. Thank you both for your fine presentations. We'll take the matter under advisement and issue a ruling in due course.